THE VILLAGE OF SKOKIE, Petitioner-Appellant, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (4th Division)   No. 1—98—1293

Opinion filed June 30, 1999.

490

R. Theodore Clark, Jr., Anthony B. Byergo, and Kristin Jones Pierre, all of Seyfarth Shaw Fairweather & Geraldson, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Marcia L. McCormick, As-

sistant Attorney General, of counsel), for respondent Illinois State Labor Relations Board.

Richard J. Tupper, of Cornfield & Feldman, of Chicago, for respondent International Association of Firefighters, Local 3033.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:
The Village of Skokie (Village) appeals on direct review the decision of the Illinois State Labor Relations Board (Board) to dismiss the charge filed against the International Association of Firefighters, Local 3033 (Union). The charge alleged the Union engaged in unfair labor practices during the pendency of an interest arbitration within the meaning of sections 10(b)(1), 10(b)(4) and 14(m) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10(b)(1), (b)(4), 14(m) (West 1998)). After an investigation, the executive director dismissed the charge, finding that it failed to raise an issue of law or fact sufficient to warrant a hearing. The issues on review are (1) whether the Board erred in finding insufficient evidence to support the Village's claim that the Union used coercion to discourage firefighters from taking the promotional exam; and (2) whether the Board erred in finding that the Union did not violate its duty to bargain by employing self-help measures.

Petitioner, the Village, and respondent, the Union, began collective-bargaining negotiations to replace their expired collective-bargaining agreement in February of 1996. On May 28, 1996, during a mediation session, the parties entered into a memorandum of agreement, which formalized their agreement on all but two issues, those being the fire lieutenant promotions and disability pay/workers compensation. The parties entered into interest arbitration to resolve these issues.

While arbitration on these two issues was pending, the Skokie Board of Fire and Police Commissioners (commissioners) began the promotional process for promotion to the rank of lieutenant on or about January 18, 1997. The commissioners outlined the parts of the examination process as well as how the exam would be weighted. On October 8, 1996, the Union sent a letter to the commissioners expressing its concern over the new changes in the eligibility requirements for the lieutenant's exam because it would exclude qualified candidates. The Union attached to this letter signatures of 79 firefighters who would not participate in the promotional exam. The signatures of the firefighters were next to their typed names in alphabetical order.

On December 4, 1996, the Union sent a letter to the commissioners demanding that they cease any promotional process until the dispute was resolved during the interest arbitration. On December 11,

1996, the Union sent a letter with a signed list of 28 firefighters who would be interested in participating in the promotional process if all members of the unit were allowed to participate.

The Union filed an unfair labor practice charge with the Board against the Village on December 17, 1996, alleging that the Village's commencement of the process to establish a new fire lieutenant eligibility list violated sections 10(a)(4), 10(a)(1) and 14(l) of the Act (5 ILCS 315/10(a)(1), (a)(4), 14(l)) (West 1998)).

The Board's executive director held this charge in abeyance until the completion of interest arbitration. On January 17, 1997, no union member participated in the fire lieutenant's examination process. The village filed the instant charge as a result.

Before addressing the merits of the issue, the court must first determine the standard of review. The Village argues that this case involves a question of fact. The Board and the Union argue that this case involves a mixed question of law and fact. The appeal is a review of an order of the Board.

■ Judicial review of the Board's decision is limited and governed by the Administrative Review Law (735 ILCS 5/3—110; 5 ILCS 315/11(e) (West 1998)). The standard of review applicable to the agency's decision depends upon whether the question presented is one of fact or one of law.

■ An administrative agency's findings and conclusions on factual questions are deemed *prima facie* true and correct. 735 ILCS 5/3—110 (West 1998). As such, the standard on review is a manifest weight of the evidence standard. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992). An administrative agency's findings on questions of law are not reviewed with the same deference as questions of fact. The standard on review for legal questions is *de novo. Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).

■ In this case, the issue presented cannot be designated solely as a question of fact or a question of law. The Board's determination should be considered a mixed question of fact and law. See *Branson*, 168 Ill. 2d at 265. The issue on review from the Board is whether the Village stated a valid claim that the Union committed an unfair labor practice. Thus, the Board's finding is part factual because the court must consider whether the facts of this case support a finding that the Union's actions were tantamount to a strike and whether the Union acted in a coercive manner. The Board's finding also involves a question of law because the use of "strike" and "coercion" under the statute requires legal interpretation. Therefore, the clearly erroneous standard of review is applicable. *Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998).

The Village alleges that the Union violated section 10(b)(1) of the Act and thus committed an unfair labor practice by submitting the October 1996 petition containing the employees' signatures next to their preprinted names in an alphabetical format. Specifically, the Village contends this format was *per se* coercive because it had the tendency to highlight any employee who chose not to participate. The Union argues the Board was correct in dismissing this charge where the Village presented no evidence of coercion except for the petition.

■ Section 10(b)(1) of the Illinois Public Labor Relations Act provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents:

(1) to restrain or coerce public employees in the exercise of the rights guaranteed in this Act ***." 5 ILCS 315/10(b)(1) (West 1998).

To survive a dismissal, a charge alleging a violation of section 10(b)(1) must contain evidence of Union threats or intimidation amounting to coercion of employees. *County of Menard*, 2 Pub. Employee Rep. (Ill.) par. 2049, No. S—CB—182 (ISLRB September 24, 1986). In order to support the issuance of a complaint and to set the charge for hearing, "the investigation must disclose adequate credible statements, facts or documents which, if substantiated and not rebutted in a hearing, would constitute sufficient evidence to support a finding of a violation of the Act." *Lake Zurich School District No. 95*, 1 Pub. Employee Rep. (Ill.) par. 1031, No. 84—CA—0003, at VII—66 (IELRB November 30, 1984).

■ In this case, the Village does not allege there were any threats, promises or intimidation by the Union of the employees but merely that the format of the petition had a coercive effect. However, we find nothing inherently coercive about a petition supporting an employee's union.

The cases cited by the Village in support of its position are those involving some coercive action on behalf of an employer toward employees. However, an employer's interference with its employees' rights is governed by the much broader language of section 10(a)(1) of the statute, wherein actions may be considered unfair when implemented by an employer and have a different effect than when conducted or implemented by the union. In other words, the union is held to a less stringent standard. Thus, the court may apply different standards to the employer and the union as their conduct relates to the employees. See *Springfield Discount, Inc.*, 195 N.L.R.B. 157, (1972); *Louis-Allis Co. v. National Labor Relations Board*, 463 F.2d 512, 517 (7th Cir. 1972). The Village argues this case is akin to an employer interrogat-

ing an employee about his views and broadcasting them to the general public. The Village cites *Kurz-Kasch, Inc.*, to support this proposition. *Kurz-Kasch, Inc.*, 239 N.L.R.B. 1044 (1978). In *Kurz-Kasch*, the National Labor Relations Board found that the employer committed coercive interrogations that were violative of section 8(a)(1) of the Act, where the employer through a supervisor requested that employees wear "vote no" buttons which the employees had to get from the plant manager's office.

The Village contends that the Board erred in finding that the Union did not violate its duty to bargain under sections 17 and 10(b)(4) of the Act. The Village argues that the Union violated this duty to bargain by sponsoring a boycott of the fire lieutenant's promotional exam. Specifically, the Village states that this action constituted a strike which the firefighters, as protective services workers, are prohibited from doing by section 14(m) of the Act. The Union and the Board contend that the Union's activity did not rise to the level of a strike and, therefore, it did not violate any duty.

Section 14(m) of the Act prohibits firefighters from withholding services. See 5 ILCS 315/14(m) (West 1998). Section 10(b)(4) of the Act provides:

> "(b) It shall be an unfair labor practice for a labor organization or its agents:
>
> * * *
>
> (4) to refuse to bargain collectively in good faith with a public employer, if it has been designated in accordance with the provisions of this Act as the exclusive representative of public employees in an appropriate unit." 5 ILCS 315/10(b)(4) (West 1998).

Under section 8(b)(3) of the National Labor Relations Act (NLRA) 29 U.S.C. § 151 *et seq.* (1994), the corollary to section 10(b)(4), it has been held that the NLRB cannot find a lack of good-faith bargaining solely because a party employs tactics designed to exert pressure on the other party. See *National Labor Relations Board v. Insurance Agents' International Union*, 361 U.S. 477, 4 L. Ed. 2d 454, 80 S. Ct. 419 (1960).

The Village does not allege that the firefighters ceased to perform any duties as assigned or failed to properly perform their duties in any manner. The only basis for this allegation is that no one signed up to take the examination. The fire lieutenant's promotional exam is, and always has been, a voluntary, unpaid undertaking, conducted on the employees', not the employer's, own time. It is not a condition or a requisite to employment. It has no bearing on the terms of employment. Thus, refusing to take the exam cannot be construed as a withholding of services.

The Village cites *Niles Township High School District 219*, 13 Pub. Employee Rep. (Ill.) par. 1042, No. 97—CB—0012—C (IELRB March 3, 1997), and *Zion Elementary School District No. 6*, 6 Pub. Employee Rep. (Ill.) par. 1021, No. 90—CB—0009—C (IELRB January 30, 1990), to support its position that anytime a public employee refuses to cooperate in an activity that has some possible link to his employer's business, that is a withholding of services. In *Niles*, teachers refused to attend a policy council advisory meeting that was part of their collective-bargaining agreement. In *Zion*, school teachers refused to perform any extra duty activities until a contract agreement was reached. In both of these cases, the Board found sufficient facts in evidence to warrant issuances of complaints because the charges raised issues of law as to whether these concerted acts of refusal to perform voluntary services in furtherance of collective bargaining constituted a strike.

In this case, taking the fire lieutenant's exam is a voluntary undertaking that is not a term or condition of employment and is not a part of the collective-bargaining agreement. The employees did not refuse to perform any tasks that they customarily would have performed but for the collective-bargaining disputes. As there are no allegations that any of the firefighters failed to perform duties, the Village cannot support a charge under section 14(m) of the Act. Therefore, we uphold the Board's decision.

The Village also argues that the Union violated section 10(b)(4) of the Act by undertaking the boycott of the promotional exam because it constituted a unilateral change in the terms and conditions of its employment.

Section 14(l) of the Act provides that, "[d]uring the pendency of proceedings before the arbitration panel, existing wages, hours, and other conditions of employment shall not be changed by action of either party without the consent of the other." 5 ILCS 315/14(l) (West 1998).

In this case, the failure of firefighters to take the optional promotional exam cannot constitute a unilateral change in conditions of employment. As stated above, the exam had no direct or indirect connection to the firefighters' performance of their assigned duties. Firefighters have no control over whether they are promoted or not. That decision is made solely by the employer. The firefighters have no control over changing the process simply by taking or refusing to take the exam.

The Village argues that because it had to cancel the exam for lack of participation, the Union's actions forced it to alter the promotion process. The Village relies on *Morton-Norwich Products, Inc.*, 28

N.L.R.B. 1101 (1977), where the National Labor Relations Board found that a union representative's demand to tape record obligatory grievance meetings was an attempt to unilaterally change the conditions of employment and was inconsistent with the status quo because it had not been done in over 10 years of meetings. This case is unlike *Morton* because the Union and firefighters are not under any contractual obligation to sign up and sit for promotional exams. Consequently, because the exam was a voluntary undertaking, the firefighters' refusal to take that exam did not change the status quo.

Based upon the foregoing analysis, we affirm the decision of the Board.

Affirmed.

HOFFMAN and WOLFSON, JJ., concur.