FOURTH DIVISION

July 20, 2000

No. 1-99-1804

CHICAGO SCHOOL REFORM BOARD ) Petition for Review

OF TRUSTEES, ) From Illinois Educational

) Labor Relations Board.

Petitioner-Appellant, )

)

) No. 98 CA 0015C

)

ILLINOIS EDUCATIONAL LABOR ) 

RELATIONS BOARD, and the CHICAGO ) 

TEACHERS UNION, LOCAL 1, AMERICAN ) 

FEDERATION OF TEACHERS, AFL-CIO, ) 

) 

Respondents-Appellees. )

JUSTICE HALL delivered the opinion of the court:

This action is brought by the Chicago School Reform Board of Trustees (the CSRBT) on a petition for administrative review of an opinion and order entered by the Illinois Educational Labor Relations Board (the Board).  The respondent, Chicago Teachers Union, Local 1, AFT-IFT, AFL-CIO (the Union), filed an unfair labor practice charge against the CSRBT, before the Board, alleging that the CSRBT violated sections 14(a)(5) and, derivatively, 14(a)(1) of the Illinois Educational Labor Relations Act (the Act)(115 ILCS 5/14(a)(5) and 5/14(a)(1) (West 1996)), by refusing to bargain collectively in good faith by refusing to provide the Union with certain requested information. On April 23, 1999, the Board ruled that the CSRBT had violated those sections of the Act and ordered, 
inter alia
, that  the CSRBT furnish the Union with the requested information.  The CSRBT filed their timely petition for review with this court on May 28, 1999.  See 115 ILCS 5/16(a)(West 1996).  For the reasons that follow, we affirm.  The following facts are relevant to this appeal:

I. BACKGROUND

During the summer of 1997, the CSRBT reconstituted seven Chicago high schools.  Reconstitution is one of several options available to the CSRBT, pursuant to statute,  for schools that have been previously placed on probation but have failed to correct deficiencies after a maximum of one year.  105 ILCS 5/34-8.3 (West 1996).  The reconstituted schools were: DuSable, Englewood, Harper, King, Orr, Phillips, and Robeson. The effect of the reconstitution was that all employees of the schools, including teachers and principals, were displaced and required to interview with the CSRBT for reassignment to the positions they held prior to the reconstitution.

Gail Koffman, Assistant to the President of Field Services for the Chicago Teachers Union, testified for the Union.  Koffman testified that the interviews were conducted by interview teams.  Following the interviews the teachers were notified as to whether they were selected for reassignment.  The Union requested a list of all teachers who were not retained at their prior high schools.  Koffman testified that 188 out of approximately 700 teachers were not reassigned to the positions they held prior to the reconstitution.  Six out of eleven union delegates were not retained.  The teachers who were not retained were offered no explanation for their displacement, even though many had received "superior" or "excellent" performance evaluations throughout their tenures.  Pursuant to the CSRBT's reassignment and layoff policy, those teachers who were not retained remained employees of the CSRBT for 10 months, during which time they were required to actively seek a position elsewhere within the Chicago Public Schools.  Any teacher who did not acquire another position within this period was laid off and given an honorable termination from service.  Koffman admitted that all 188 teachers remained employed by the CSRBT following the reconstitution and that as of the date of the hearing not one teacher had been laid off. 

According to Koffman, the Union received complaints from its members regarding the manner in which the interviews were conducted.  Several members felt that they were not retained due to their union activities or age or race discrimination and requested that the Union file grievances on their behalf.  The Union wanted to investigate these charges.  Consequently, on August 15, 1997, Thomas Reece, President of the Union, tendered a written request for certain information to the CSRBT,  in accordance with the provisions of Article 1-7
(footnote: 1) of the 1995-99 collective bargaining agreement (CBA).  The following information was requested: (1) the names of the members of the interview teams who conducted the interviews at each of the seven reconstituted high schools and the criteria by which each of the team members were selected; (2) the instructions given to the members of the interview teams; (3) the questions that were asked of the classroom and non-classroom teachers and career service members of the CTU bargaining unit; (4) the criteria for appointing or not appointing teachers and career service members of the CTU bargaining unit; and (5) copies of all reports the interview teams submitted to the CSRBT.  Koffman testified that all of the requested information was needed to explore the legitimacy of the complaints that teachers were not retained based upon age, race and union activity or membership.  The requested information was deemed vital by the Union for assessing whether members had grievable discrimination claims based upon the reconstitution interview process.

Receiving no response to its request for information, the Union proceeded to file grievances on behalf of three members.   Each of the grievances contended that the CSRBT had violated one or more of the non-discrimination provisions of the CBA.  The first grievance was filed on August 21, 1997, on behalf of Union delegate Stuart Switt.  The grievance alleged that the CSRBT violated the terms of the CBA by not retaining Switt at Robeson High School because of his Union activities.  A second grievance was filed on September 3, 1997, on behalf of Patricia Michaels.  The grievance alleged that the CSRBT refused to retain her at Orr High School, despite her 27 years of "superior" performance evaluations, because of her Union affiliation and activities.  A third grievance was filed on September 5, 1997, on behalf of Jay Freeman, a teacher who was not retained at Englewood High School.  It alleged that the interview process lacked any objective criteria and was demeaning and discriminatory. 

On September 4, 1997, Timothy D. Brandhust, the Director of the Bureau of Labor and Employee Relations for the Chicago Public Schools, refused to supply the requested information on the basis that "[t]he Union is not entitled to the requested information under [Article 1-7 of the CBA]."   

The Union filed this unfair labor practice charge on September 3, 1997, contending that by refusing to provide the requested information, the CSRBT violated sections 14(a)(5) and, derivatively, 14(a)(1) of the Act (115 ILCS 5/14(a)(5) & 5/14(a)(1) (West 1996)).  On December 1, 1997, the Board issued a complaint and notice of hearing on the Union's unfair labor practice charge.  The complaint alleged: (1) that the requested information is necessary for and relevant to the Union's performance of its function as the exclusive collective bargaining representative for the teachers; (2) that the CSRBT failed to supply the requested information; and (3) that by so refusing, the CSRBT has failed to bargain collectively in good faith with the Union thereby engaging in an unfair labor practice within the meaning of sections 14(a)(5) and 14(a)(1) of the Act.   The CSRBT filed an answer denying that the requested information was necessary for, and relevant to, the Union's performance of its function as the exclusive bargaining representative.  The CSRBT also asserted as an affirmative defense that the requested information pertained to prohibited subjects of bargaining, as specified in section 4.5(a)(3) and (4) of the Act. 115 ILCS 5/4.5(a)(3)(4) (West 1996).

 The matter was heard by an administrative law judge (ALJ) on March 27, 1998.  During the hearing the Union maintained that the requested information concerned the wages, hours, and terms and conditions of employment and, therefore, was relevant for the performance of its contract administration duties as the exclusive bargaining agent.  The information was relevant to the Union's ability to make an informed decision as to whether the claims of discrimination it received were meritorious and a proper basis for filing a grievance.  The CSRBT maintained that the requested information was to be used to assist the Union in the prosecution of grievances challenging staffing decisions.  Since such decisions are prohibited subjects of bargaining, the requested information was not necessary for or relevant to the Union's performance of its function as the exclusive bargaining agent.  According to the CSRBT, the allegations relating to violations of the anti-discrimination provisions of the CBA were simply a tool to circumvent the prohibitions of bargaining set out in section 4.5 of the Act.

On June 24, 1998, the ALJ issued a recommended decision and order finding that because of the displacement and potential termination of the teachers as a result of the reconstitution process, the information requested by the Union concerned terms and conditions of employment.  Thus, the requested information was presumptively relevant to the Union's duties of contract administration.  The ALJ further found that nothing in the Illinois School Code or the Act rendered the anti-discrimination clauses of the CBA invalid.  Therefore, the ALJ  found that by refusing to supply the requested information, the CSRBT violated sections 14(a)(5), and derivatively 14(a)(1) of the Act.  He ordered, 
inter alia
, that the CSRBT  furnish the Union with the requested information.

The CSRBT filed exceptions to the ALJ's recommended order and decision.  In a split decision, the Board adopted the ALJ's recommended order and decision in an opinion and order issued on April 23, 1999.  Two members of the Board voted to affirm the ALJ, while two voted to reverse. 
(footnote: 2)  On appeal, the CSRBT contends that the Board erred in finding that the CSRBT violated section 14(a)(5) and derivatively, section 14(a)(1) of the Act
, by refusing to give the Union the information it requested.       

II.  DISCUSSION

A.  Standard of Review

An administrative agency's findings of fact are deemed to be 
prima facie
 true and correct.  735 ILCS 5/3-110 (West 1998); 
Village of Skokie v. Illinois State Labor Relations Bd.
, 306 Ill. App. 3d 489, 714 N.E.2d 87 (1999).  Factual findings will not be disturbed by this court unless they are against the manifest weight of the evidence.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 606 N.E.2d 1111 (1992).  An administrative agency's findings on a question of law are reviewed with less deference.  This court reviews such determinations on a 
de novo
 basis.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 659 N.E.2d 961 (1995).

In this case, the issue presented cannot be designated solely as a question of fact or a question of law.  Thus, the Board's determination should be considered a mixed question of fact and law and the "clearly erroneous" standard of review is applicable.  See 
Branson
, 168 Ill. 2d at 254; 
City of Belvidere v. Illinois State Labor Rels. Bd.
, 181 Ill. 2d 191, 692 N.E.2d 295 (1998); 
Village of Skokie
, 306 Ill. App. 3d at 492.

B.  Duty to Provide Requested Information

The CSRBT is an educational employer within the meaning of Section 2(a) of the Act.  115 ILCS 5/2(a)(West 1996).  The Union is an employee organization within the meaning of Section 2(c) of the Act. 115 ILCS 5/2(c)(West 1996).  The Union is the exclusive representative within the meaning of Section 2(d) of the Act (115 ILCS 5/2(d)(West 1996)) and represents a bargaining unit that includes secondary teachers.  

The charge filed by the Union in this case alleged that the "employer failed and refused to supply information to the Union pursuant to a written request dated August 15, 1997...", in violation of Section 14(a)(5) and, derivatively, Section 14(a)(1) of the Act.  Section 14(a)(5) prohibits educational employers from:

"Refusing to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative." 115 ILCS 5/14(a)(5)(West 1996).

Section 14(a)(1) prohibits educational employers from "[i]nterfering, restraining or coercing employees in the exercise of rights guaranteed under this Act."  115 ILCS 5/14(a)(1) (West 1996).

The CSRBT contends that it had no duty to provide the requested information to the Union.  Specifically, they contend that the requested information was not relevant or necessary to the Union's performance of its responsibilities to bargain and administer the parties' CBA, because it related to class staffing and assignment, a prohibited subject of bargaining.  

It has been held that an educational employer's statutory duty to bargain in good faith includes the duty to provide the Union with information, upon request.  
NLRB v. Acme Industrial Co.
, 385 U.S. 432, 17 L. Ed. 2d 495, 87 S. Ct. 565  (1967); 
Thornton Community College
, 5 PERI ¶1003 (IELRB 1988).
(footnote: 3)  However, the Union is not entitled to all information held by management.  
Lebannon Community Unit School District
, 11 PERI ¶1032 (ILERB 1995).  The information sought must be directly relevant to the Union's function as the exclusive bargaining representative and must appear "reasonably necessary" for the performance of this function.  
Thornton Community College
, 5 PERI ¶1003 (IELRB 1988).  It is recognized that the duty to bargain in good faith extends beyond the contract negotiations to grievance administration.  
NLRB v. Acme Industrial Co.
, 385 U.S. 432, 17 L. Ed. 2d 495, 87 S. Ct. 565 (1967).  

The determinative issue in this case is whether the requested information is relevant and necessary to the performance of the Union's functions and duties as the exclusive bargaining representative.  

The Union contends that the requested information is presumptively relevant to its duties as the exclusive bargaining agent because it relates to the wages, hours, and terms and conditions of employment.  
Dupo Community Unit School District #196
, 13 PERI 1044 (IELRB 1997); 
Cahokia Community Unit School District No. 187
, 8 PERI ¶1058 (IELRB 1990).  The Board found that the requested information "falls squarely" within the meaning of wages, hours, and terms and conditions of employment, because it concerns the procedures and criteria used by the CSRBT during the reconstitution process, which resulted in the displacement and possible termination of 188 bargaining unit members.  The CSRBT has never argued that the requested information did not concern wages, hours, and terms and conditions of employment.  Nor has the CSRBT raised any 
bona fide
 objections, such as reasonable good faith confidentiality concerns or an undue burden in compilation.  See 
Hardin County Community Unit School District No. 1
,  7 PERI ¶ 1035 (IELRB 1991).  We find that the requested information is presumptively relevant.  

However, we must still consider the CSRBT's contention that the requested information deals with a prohibited subject of bargaining.  Section 4.5 of the Act prohibits the CSRBT and the Union from engaging in collective bargaining on certain subjects, including:

"(4) Decisions to determine class size, class staffing and assignment, class schedules, academic calendar, hours and places of instruction or pupil assessment policies, and the impact of these decisions on individual employees or the bargaining unit." 115 ILCS 5/4.5(a)(4)(West 1996).

These types of decisions are "within the sole discretion of the educational employer to make."  115 ILCS 5/4.5(b) (West 1996).   

The CSRBT argues that the information requested by the Union is related to "class staffing and assignment", a prohibited subject of bargaining.  Essentially, the CSRBT contends that the grievances for which the Union sought information were inarbitrable because the subject matter of those grievances would conflict with section 4.5 of the Act.  An educational employer is not required to arbitrate a dispute that it did not contractually agree to arbitrate or which is not arbitrable under section 10(b) of the Act.  
Board of Educ. v. Illinois Educ. Labor Relations Bd.
, 165 Ill. 2d 80, 649 N.E.2d 369 (1995)
.  Section 10(b) provides in pertinent part:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." 115 ILCS 5/10(b) (West 1996).

The CSRBT correctly asserts that an educational employer need not supply requested information relating to a non-bargainable grievance.  
Village of Franklin Park v.  Illinois State Labor Relations Bd.
, 265 Ill. App. 3d 997, 638 N.E.2d 1144 (1994); 
Lebannon Community School District 9
, 11 PERI ¶1032 (IELRB 1995).  However, we find that the grievances filed in this case were grievable.    

 The grievances filed here, for which the Union requested information, involved alleged violations of the non-discrimination provisions in the parties' CBA.  The grievances did not challenge the CSRBT's authority to make decisions regarding class staffing and assignment.  They did not challenge  the CSRBT's authority to reconstitute schools and to reassign teachers.  The grievances sought to determine whether the reasons that three teachers were not retained were discriminatory reasons prohibited by the parties' CBA.

In 
Chicago Teachers Union (Sandra Gordon) & Chicago School Reform Board of Trustees
, 15 PERI ¶ 1038 (IELRB 1999), the Board analyzed the language contained in section 4.5(a)(4) of the Act and concluded that the word "class" modifies both "staffing" and "assignment."  The Board interpreted "class staffing" and "class assignment" to mean how a class is staffed (i.e. one teacher, two teachers working as a team, etc.) or what class is assigned to a particular teacher.  Relying on this construction, the Board found that the teacher's grievance protesting her termination as well as the school district's refusal to make her a permanent rather than a reserve teacher, did not concern "class staffing and assignment."  Rather the grievance involved a dispute regarding retention and promotion, not prohibited subjects of bargaining.  The 
Gordon
 case is presently on appeal. (Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board, 1-99-1680).

Here the grievances relate to the decision whether to retain the grievants as employees, not to how a class is staffed (one or two teachers) or what class a particular teacher is assigned to teach.  The grievances at issue involve questions of retention and discrimination, not prohibited subjects of bargaining. 

In 
Chicago Teachers Union (Barry Riback) & Chicago School Reform Board of Trustees
, 15 PERI ¶1008 (IELRB ALJ 1998), the ALJ found that the portion of the Union's grievance contesting the teacher's classification as a reserve teacher eligible for permanent employment was arbitrable under Article 3 of the parties' collective bargaining agreement and did not conflict with section 4.5 of the Act, because it did not contest the CSRBT's statutory right to layoff employees.  In 
Chicago Teachers Union (Carol Wood) & Chicago School Reform Board of Trustees
, 14 PERI ¶1079 (IELRB ALJ 1998), the ALJ similarly found that the grievance was arbitrable and did not conflict with section 4.5 of the Act.  The issue in the grievance was one of classification and compensation, not whether the CSRBT had the authority to layoff or assign Wood.  The ALJ in 
Wood
 reasoned that the CSRBT "should not be able to avoid scrutiny of this matter by merely labeling its action toward [the grievant] as either a 'layoff' and/or 'assignment' decision."

In both 
Wood
 and 
Riback
, the ALJ conceded that the CSRBT has broad powers under section 4.5 of the Act, but pointed out that "the exercise of [the board's] discretionary powers may not be done in an arbitrary, capricious or unreasonable manner."  To allow the CSRBT in this case to reconstitute schools and displace teachers in a discriminatory manner would be to condone an arbitrary, capricious, and unreasonable exercise of those powers.

The 
Lebannon
 case cited by the CSRBT is distinguishable.  In 
Lebannon
 the Board found that the requested information was not reasonably necessary for the performance of its function as the exclusive bargaining representative because the grievance was based on non-negotiable board of education policies, rather than on a violation of any provision of the parties' collective bargaining agreement.  In the present case, the grievances are clearly based on alleged violations of specific provisions of the parties' CBA.

The CSRBT contractually agreed to arbitrate disputes involving the non-

discrimination provisions of the agreement.  The parties' collective bargaining agreement contains several provisions specifically prohibiting discrimination.  Article three of the CBA defines a "grievance" very broadly as "a complaint involving a work situation *** or a complaint that there has been a violation, misinterpretation, or misapplication of any provisions of the agreement."  There are no specific exclusions in this grievance clause.  The Supreme Court has held that an agreement to arbitrate disputes will be found where the collective bargaining agreement contains a broad grievance clause without any specific exclusions unless there is forceful evidence of an intent to exclude a particular claim from arbitration.  
United Steelworkers of America v. Warrior & Gulf Navigation Co.
, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960).  See also 
Staunton Community Unit School Dist. v. Illinois Educational Labor Relations Bd.
, 200 Ill. App. 3d 370, 558 N.E.2d 751 (1990).  In light of the broad language of the parties' grievance clause and the lack of any exclusions from arbitration, it can be said that the CSRBT contractually agreed to arbitrate discrimination claims.

We find that the information requested by the Union is relevant to its duties as the exclusive bargaining agent of its members.  The requested information was not related to "class staffing and assignment", nor to any other prohibited subject of bargaining.  Therefore, we affirm the Board's finding that the CSRBT violated section 14(a)(5), and derivatively section 14(a)(1) of the Act by failing to provide the requested information to the Union.

C.  Constitutionality of Section 4.5(a)(3)&(4) of the Act 

The Union makes a conclusory argument that sections 4.5(a)(3) and (4) of the Act violate the Illinois and United States Constitutions.  The Union failed to comply with Supreme Court Rule
 
341(e)(7) (155 Ill. 2d R. 341 (e) (7)) by failing to provide any pertinent authority, legal analysis or argument in support of its contention.  Where a party claiming a statute is unconstitutional fails to argue specifically why the statute is unconstitutional and cites no authority in support of its contention, that argument has been waived.  
Kirchner v. Greene
, 294 Ill. App. 3d 672, 691 N.E.2d 107 (1998); 
County Mutual Insurance Co. v. Birner
, 293 Ill. App. 3d 452, 688 N.E.2d 859 (1997); 
Heatherly v. Rodman & Rensahw
, 287 Ill. App. 3d 372, 678 N.E.2d 59 (1997).

Accordingly, for the reasons set forth above the decision of the Illinois Educational Labor Relations Board is affirmed.

Affirmed.

HOFFMAN, P.J., and SOUTH, J., concur.

FOOTNOTES
1:
Article 1-7 of the parties' CBA provides in pertinent part that "[t]he Office of the General Superintendent shall furnish to the UNION information necessary to the intelligent and professional resolution of specific grievances and professional problems of teachers or other bargaining unit members."

2:
When there is a tie vote, the ALJ's ruling becomes the final order of the agency but does not have any precedential effect.  
Board of Education v. Illinois Educ. Labor Relations Bd.
, 165 Ill. App. 3d 41, 518 N.E.2d 713 (1987).  

3:
While we recognize that reported decisions of Illinois Educational Labor Relations Board have no precedential value we find them to be instructive on some issues and therefore reference them where appropriate.