# Illinois Official Reports

## Appellate Court

---

**Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board,**
**2013 IL App (1st) 122447**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD, LYNNE O. SERED, IELRB Chairman; IELRB Members, RONALD F. ETTINGER, GILBERT O'BRIEN, MICHAEL H. PRUETER, MICHAEL K. SMITH, and SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 73, CLC, CTW, Respondents. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2447 |
| Filed | December 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the termination of a school security officer as a result of an altercation with two students, the finding of the Illinois Educational Labor Relations Board that the school board committed an unfair labor practice by refusing to turn over the disciplinary records of the students pursuant to a subpoena issued by the arbitrator at the request of the officer's union in his grievance proceeding was reversed, since the disclosure of the records was prohibited by the Student Records Act in the absence of a court order, and although the arbitrator's subpoena was not a court order, the clear relevance of the records would indicate that an actual court order could be easily obtained. |
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board, No. 2011-CA-0088-C. |
| Judgment | Reversed. |

| Counsel on Appeal | James L. Bebley and Lee Ann Lowder, both of Board of Education, Chicago, for petitioner. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sharon Purcell, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board. |
| | Tyson B. Roan, of Service Employees International Union, Local 73, of Chicago, for respondent Service Employees International Union, Local 73. |
| | Dowd Bloch & Bennet, of Chicago (Robert E. Bloch and Josiah A. Groff, of counsel), for *amicus curiae* Chicago Teachers Union. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1 Petitioner Board of Education of the City of Chicago (Board) seeks direct administrative review of the finding of the Illinois Educational Labor Relations Board (IELRB) that it committed an unfair labor practice when it refused to release student records during a grievance proceeding arising out of the Board's termination of a member of the Service Employees International Union, Local 73 (Union). On direct appeal to this court pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994) and section 3-115 of the Code of Civil Procedure (735 ILCS 5/3-113 (West 2010)), the Board argues that section 6 of the Illinois School Student Records Act (105 ILCS 10/6 (West 2010)) (Student Records Act), prohibited it from releasing student records without a court order, notwithstanding the Union's willingness to accept a redacted version of the records. The Board further contends that its one-time refusal to provide the records did not constitute an unfair labor practice. For the reasons that follow, we reverse.

¶ 2 BACKGROUND

¶ 3 This case arises out of the February 2010 termination of Clinton Cooper, a school security officer at Emil G. Hirsch High School. The Board discharged Cooper, a union member, on the grounds that he initiated physical altercations with two students, D.E. and R.G. The Union initiated a grievance proceeding stemming from this discharge. As a basis for challenging

Cooper's termination, the Union contended that the altercation with R.G. never occurred and the second altercation was initiated by D.E. Specifically, the Union believed both students had been disciplined for lying and that D.E. had a history of violence and was expelled following Cooper's termination as a result of a fight with school staff.

¶ 4      After exhausting the initial steps of the grievance procedure outlined in the parties' collective bargaining agreement (CBA), the Union proceeded to arbitration. In preparation for the arbitration, the Union propounded document requests on the Board in September 2010. The Board turned over most of the requested records, but declined to produce the disciplinary records of D.E. and R.G. on the grounds that the records were confidential. In response, the Union indicated its willingness to accept redacted files omitting the students' surnames. The Union also assured the Board that the documents would remain confidential pursuant to section 3-5.3 of the CBA, which requires all grievances to be processed confidentially.

¶ 5      When the Board still declined to turn over the records, the Union moved before the arbitrator for execution of a subpoena *duces tecum* for the disciplinary files of the two students. In its motion for execution of the subpoena, the Union stated it would accept versions of the records referring to the students only by their initials. On February 18, 2011, the arbitrator executed the subpoena, but the Board persisted in its refusal to provide the documents. However, the Board indicated that it would comply if an order was issued by a court.

¶ 6      The Union declined to seek an order from the court and instead filed an unfair labor practice charge against the Board on March 18, 2011. The Union also went forward with the arbitration on April 4, 2011, and on May 11, 2011, the arbitrator ordered that Cooper be reinstated.

¶ 7      In its charge of unfair labor practices, the Union alleged that the Board's decision to withhold the students' records violated section 14(a)(5) of the Illinois Educational Labor Relations Act (115 ILCS 5/14(a)(5) (West 2010)) (the Labor Relations Act), which requires an employer to bargain collectively in good faith with an employee representative. In its answer to the charge, the Board argued that under the Student Records Act it was prohibited from releasing student disciplinary records without a court order. The Board further argued that the controversy was moot in light of the arbitrator's decision reinstating Cooper. The parties agreed to proceed on a stipulated record in lieu of a hearing and submitted posthearing briefs to the administrative law judge (ALJ). After finding no issues of fact, the ALJ referred the case to the IELRB for decision.

¶ 8      The IELRB determined that the Board's confidentiality concerns were mitigated in light of the Union's agreement to accept redacted records and keep the contents of those records confidential. Accordingly, the IELRB found that the Board committed an unfair labor practice and ordered the Board to turn over D.E. and R.G.'s records to the Union and to post a notice to employees informing them of their rights. In addition, the IELRB found that the matter was not moot, citing *Grand Rapids Press*, 331 N.L.R.B. 296, 300 (2000), where the National Labor Relations Board held that an evaluation of a union's right to requested information must be based on the situation which existed at the time the request was made, rather than the situation which exists at the time that right is vindicated.

¶ 9        The Board filed a timely petition for review of the order. The Chicago Teachers Union was permitted to file an *amicus curiae* brief in support of the IELRB and the Union.

¶ 10                                                ANALYSIS

¶ 11       The overarching issue on appeal is whether student disciplinary records are protected from disclosure under the Student Records Act during grievance proceedings before the IELRB.[1] Resolution of this question necessarily requires interpretation of the Student Records Act. Ordinarily, such questions of law are subject to *de novo* review. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05 (1998); see also *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 603 (2008) (statutory interpretation subject to *de novo* review). However, both the IELRB and the Union (collectively, respondents) argue that a more deferential standard of review is appropriate.

¶ 12       To begin, the IELRB contends that its decision is entitled to "substantial deference" where it interprets ambiguous statutes that it is tasked with administering and enforcing. But these are not the circumstances presented here. This case does not involve construction of the Labor Relations Act, which we can reasonably conclude the IELRB is responsible for enforcing, but the Student Records Act, which is enforced by the Illinois State Board of Education (105 ILCS 10/3(a) (West 2010)). As such, this case is distinguishable from *County of Du Page*, where the supreme court deferred to the Illinois Labor Relation Board's (ILRB) interpretation of section 9(a-5) of the Illinois Public Labor Relations Act (5 ILCS 315/9(a-5) (West 2004)), which the ILRB was charged with administering. *County of Du Page*, 231 Ill. 2d at 608-09.

¶ 13       The argument advanced by the Union is no more persuasive. The Union cites several cases in which a reviewing court applied a clearly erroneous standard of review to a decision of the IELRB (see, *e.g.*, *Speed District 802 v. Warning*, 242 Ill. 2d 92, 110-11 (2011); *Board of Education v. Sered*, 366 Ill. App. 3d 330, 336 (2006); *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 522, 528 (2000)), but none of these cases involved an affirmative defense to compliance with the Labor Relations Act based on the operation of a separate statute. For example, in *Chicago School Reform Board of Trustees*, the board refused to turn over certain documents to the union on the basis that these documents were not relevant to the union's performance of its responsibilities to bargain and administer the parties' collective bargaining agreement. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 528-29. Thus, the only issue was the relevance of the undisclosed documents, a mixed question of law and fact subject to the clearly erroneous standard of review. *Id.* at 528.

¶ 14       In contrast, here, the Board does not dispute that the student disciplinary records were relevant to the grievance proceedings. Rather, the Board's argument turns on whether the Student Records Act prohibits disclosure of the records notwithstanding their relevancy. This is a pure question of law subject to *de novo* review. See *City of Belvidere*, 181 Ill. 2d at 204-05.

¶ 15       Before turning to an examination of whether the provisions of the Student Records Act operate to bar disclosure of student records in this case, it is helpful to begin by setting forth the

_____

[1]On appeal, the Board abandons its contention that this issue is moot.

- 4 -

basis of an educational employer's general duty to disclose information to a bargaining unit. This duty stems from section 14(a)(5) of the Labor Relations Act, which reads, in relevant part:

"(a) Educational employers, their agents or representatives are prohibited from:

\* \* \*

(5) Refusing to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative \*\*\*." 115 ILCS 5/14(a)(5) (West 2010).

Bargaining in good faith includes an obligation on the part of the employer to provide the union with information upon request. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 528 (citing *National Labor Relations Board v. Acme Industrial Co.*, 385 U.S. 432, 435-36 (1967) ("[t]here can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties")).

¶ 16      However, this duty to provide information is not absolute. The information must be relevant to the proceedings and reasonably necessary to the union's performance of its responsibilities. *Allied Mechanical Services, Inc.*, 332 N.L.R.B. 1600 (2001);[2] see also *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 529. Relevancy is determined pursuant to a broad, discovery-based standard. *Dupo Federation of Teachers, Local 1732*, 13 PERI ¶ 1044 (IELRB 1997).[3] That is, information is relevant if it "would be of use to the union in carrying out its statutory duties and responsibilities." *Acme Industrial*, 385 U.S. at 437.

¶ 17      Moreover, as the IELRB acknowledges, even relevant information may be withheld where an employer asserts an affirmative defense to production, such as confidentiality concerns or the need for employee privacy. See *Detroit Edison Co. v. National Labor Relations Board*, 440 U.S. 301, 314-15 (1979). While employers' assertions of such defenses have not always met with success (see, *e.g.*, *Alton Education Ass'n*, 21 PERI ¶ 79 (IELRB 2005); *Chicago Fire Fighters Union, Local 2*, 12 PERI ¶ 3015 (ILLRB 1996)), no Illinois court has evaluated the merits of a *statutory* defense to production in a published decision. Thus, the scenario presented in this case is one of first impression.

¶ 18      Initially, the parties dispute whether the disciplinary files of D.E. and R.G. are student records within the meaning of the Student Records Act, which defines "school student record" as "any writing or other recorded information concerning a student and by which a student may

---

[2]Rulings of the NLRB and federal courts construing labor relations acts are persuasive authority when analyzing similar provisions in Illinois acts. See *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board*, 190 Ill. App. 3d 259, 264 (1989).

[3]While decisions of the IELRB have no precedential value, they are instructive on certain issues. See, *e.g.*, *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 529 n.3; see also *Central Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 388 Ill. App. 3d 1060, 1066 (2009) (citing IELRB decision for factors to consider when determining when an arbitration award is binding).

be individually identified, maintained by a school or at its direction or by an employee of a school." 105 ILCS 10/2(d) (West 2010). Respondents contend that the Union's willingness to accept redacted version of the records with the students named only by their initials renders the students unable to be individually identified and removes their records from the protection of the Student Records Act. We disagree.

¶ 19     In support of their argument, respondents cite to cases holding that "masked" student records do not fall within the Student Records Act's scope.[4] See, *e.g.*, *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 379 (1989); *Human Rights Authority of the State of Illinois Guardianship & Advocacy Comm'n v. Miller*, 124 Ill. App. 3d 701, 704 (1984). A "masked" record is one where any information identifying a student has been deleted and the record is released for the purpose of research, statistical reporting, or planning. *Garlick v. Oak Park & River Forest High School District No. 200*, 389 Ill. App. 3d 306, 312-13 (2009) (citing *Bowie*, 128 Ill. 2d at 379, and *Miller*, 124 Ill. App. 3d at 704).

¶ 20     In both *Bowie* and *Miller*, the petitioners sought the records of a large group of students. *Bowie*, 128 Ill. 2d at 376 (seeking release of 1982-1986 California Achievement Test scores for students in grades 2, 3, 5, 6, and 8 from 12 schools within the district); *Miller*, 124 Ill. App. 3d at 702 (seeking release of school district's disabled students' educational program records). Neither the *Bowie* nor the *Miller* petitioners were concerned with the record of any individual student, but with the records in the aggregate. Additionally, the purpose of the petitioners' request was to investigate and conduct research. In *Miller*, for example, the Human Rights Authority requested the educational program records in response to a complaint that the Galesburg School District was not providing state-mandated occupational and physical therapy for its students. *Miller*, 124 Ill. App. 3d at 702.

¶ 21     Here, in contrast, the Union did not seek the release of disciplinary records in the aggregate for purposes of research or investigation. Rather, the Union sought the records of two specific students for the purpose of discovering their individual disciplinary history. The only way in which the two sets of records would have been useful to the Union is if they could both be linked to a student involved in the alleged altercations with Cooper. For these reasons, the mere redaction of the students' surnames or reference to the students by their initials does not render the records "masked" as that term has been defined in *Garlick*. Accordingly, we find that the disciplinary records sought by the Union are "school student records" pursuant to section 2(d) of the Student Records Act.

---

[4]The Union also cites cases from foreign jurisdictions holding that redacted disciplinary records do not fall within the ambit of the Family Educational Rights and Privacy Act, which limits the release of "information directly related to a student." 20 U.S.C. § 1232g(4)(A)(i) (2006); see *Board of Trustees, Cut Bank Public Schools v. Cut Bank Pioneer Press*, 160 P.3d 482, 488 (Mont. 2007); *State ex rel. The Miami Student v. Miami University*, 680 N.E.2d 956, 959 (Ohio 1997). We do not find these cases persuasive where there is Illinois authority interpreting the specific language of the Student Records Act that is at issue in this case. See *Allstate Insurance Co. v. Lane*, 345 Ill. App. 3d 547, 552 (2003) ("[o]nly in the absence of Illinois authority on the point of law in question are we to look to other jurisdictions for persuasive authority").

¶ 22     It is undisputed that the Student Records Act prohibits the release, transfer, disclosure or dissemination of school student records except under certain circumstances. 105 ILCS 10/6 (West 2010). Respondents suggest that this prohibition gives rise to a conflict with the Labor Relations Act, which, as discussed *supra*, generally requires an educational employer to provide a bargaining representative with relevant information upon request. As a means of resolving this conflict, respondents point to section 17 of the Labor Relations Act, which provides: "In case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation, the provisions of this Act shall prevail and control." 115 ILCS 5/17 (West 2010). Respondents contend that this section operates to allow release of the records notwithstanding the Student Record Act's provisions limiting their release. But this argument begins from a false premise, namely, that the Labor Relations Act and the Student Records Act are in conflict. We agree with the Board that no conflict exists.

¶ 23     Significantly, the Student Records Act does not categorically prohibit the release of school student records. Rather, the Student Records Act allows release of records in certain circumstances, including pursuant to a court order. 105 ILCS 10/6(a)(5) (West 2010). It is this exception that a union may invoke when seeking disclosure. Specifically, if after receiving a subpoena issued by an arbitrator, a school board refuses to turn over student records, a union may apply to the court to have the subpoena enforced. 710 ILCS 5/7(a) (West 2010). In this way, the interests of an educational employer in protecting the confidentiality of sensitive student records are neatly balanced with the interests of a bargaining representative in obtaining all relevant information to perform its duties: neither must give way to the other.

¶ 24     Respondents and *amicus* argue against this result, contending that section 6(a)(6) of the Student Records Act permits disclosure in the absence of a court order. This section allows release of school student records "[t]o any person as specifically required by State or federal law." 105 ILCS 10/6(a)(6) (West 2010). According to respondents and *amicus*, the state law "specifically" requiring disclosure is the Labor Relations Act, which requires educational employers to bargain in good faith with employee representatives. 115 ILCS 5/14(a)(5) (West 2010). We do not agree that this state law is sufficiently specific so as to require disclosure of student records under the Student Records Act.

¶ 25     *Aufox v. Board of Education of Township High School District No. 113*, 225 Ill. App. 3d 444 (1992), is instructive in this regard. There, petitioners challenged the release to the circuit court of the hearing officer's finding approving the school district's placement of their son. *Aufox*, 225 Ill. App. 3d at 446-47. The parties agreed that the findings of the hearing officer were a school student record under the Student Records Act (and thus subject to disclosure only under certain limited circumstances), but the school board argued that release was required by section 14-8.02(j) of the School Code (Ill. Rev. Stat. 1989, ch. 122, ¶ 14-8.02(j)). *Aufox*, 225 Ill. App. 3d at 448-49. Section 14-8.02(j) provided that where a party files an action in circuit court challenging the decision in a hearing " 'The court shall receive the records of the administrative proceedings.' " *Id.* at 449 (quoting Ill. Rev. Stat. 1989, ch. 122, ¶ 14-8.02(j)). The court in *Aufox* concluded that "shall" represented a mandatory obligation, and thus agreed with the school board that section 6(a)(6) of the Student Records Act allowed it to release the findings of the hearing officer. *Id.*

¶ 26        Here, the state law at issue is not nearly so specific. Significantly, section 14(a)(5) of the Labor Relations Act does not expressly order disclosure of records. Instead, that requirement is derived from case law, which, unlike the School Code discussed in *Aufox*, does not impose an unconditional and mandatory obligation on an employer to turn over a specific category of documents to a union upon request. Rather, the duty to disclose is limited to relevant documents that would assist the union in the performance of its collective bargaining responsibilities. In addition, the duty may be circumscribed by any *bona fide* confidentiality concerns articulated by the employer. Because this is far from a specific requirement for an employer to turn over student records to a bargaining unit, we conclude that section 6(a)(6) does not permit disclosure here.

¶ 27        Respondents and *amicus* suggest that the union's agreement to accept redacted records and to hold them in confidence alleviates any concern the Board may assert in releasing them. But these parties do not address the right afforded parents under the Student Records Act to prior notice and the opportunity to challenge the release of student records. 105 ILCS 10/6, 7 (West 2010). While the union and the Board could agree on procedures for the release and handling of student records relevant to grievance proceedings, they cannot by agreement abrogate the statutory right of parents to challenge, prior to their release, the "accuracy, relevance or propriety of any entry in the school student records." 105 ILCS 10/7 (West 2010). We see no basis upon which to conclude that the union's need for student records, under any and all circumstances, takes precedence over the right of parents to notice and the opportunity to challenge the release of their child's records.

¶ 28        *Amicus*, citing timeliness concerns stemming from requiring parties to proceed to court for enforcement of an arbitral subpoena, then urges us to find, in the alternative, that a subpoena issued by an arbitrator is tantamount to a "court order" for purposes of section 6(a)(5) of the Student Records Act. However, the language of the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2010)) (the Arbitration Act) points us to the opposite conclusion.[5]

¶ 29        To be sure, arbitrations are quasi-judicial in nature. *Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559, 563 (1997). Indeed, section 7(a) of the Arbitration Act allows arbitrators to issue subpoenas for the attendance of witnesses and the production of documents, much the way a court does. 710 ILCS 5/7(a) (West 2010). However, that section goes on to state that parties may apply to a court for enforcement of a subpoena so issued "in the manner provided by law for the service and enforcement of subpoenas in civil cases." *Id*. This language suggests that notwithstanding their quasi-judicial powers, arbitrators must ultimately turn to courts to achieve compliance with certain orders. In other words, arbitral subpoenas themselves are not court orders. Were we to hold otherwise, we would effectively nullify the enforcement language of section 7(a), a result that is at odds with one of the cardinal principles of statutory construction–that statutes should be construed so as to render no language or portion meaningless. See *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). Simply stated, if the legislature intended that arbitral subpoenas should be treated as court orders, it would not have been

---

[5]The Arbitration Act governed the arbitration between the Union and the Board given that there was no agreement to the contrary. See *Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559, 563 (1997).

necessary to specify that parties could apply to a court for their enforcement. For these reasons, we decline to accept *amicus*'s position equating arbitral subpoenas with court orders for purposes of section 6(a)(5) of the Student Records Act.

¶ 30 In reaching this conclusion, we are not unmindful of the delays that may ensue as a result of proceeding with an enforcement action in the circuit court. See *North Shore Sanitary District v. Illinois State Labor Relations Board*, 262 Ill. App. 3d 279, 285 (1994) (proceedings before hearing officer delayed over one year while ILRB awaited outcome of administrative subpoena enforcement action); *Vaughn*, 6 PERI ¶ 2021 n.2 (ISLRB 1990) (same). However, we believe that such lengthy delays are the exception rather than the rule. Where, as here, there is no dispute as to the documents' relevance to the proceedings, the enforcement action can be resolved expeditiously.[6]

¶ 31 Finally, because we agree with the Board's contention that section 6 of the Student Records Act bars disclosure of student disciplinary records without a court order, we need not consider whether the Family Educational Rights and Privacy Act also prohibits disclosure.

¶ 32                                    CONCLUSION
¶ 33 For the reasons stated, we reverse the decision of the IELRB.

¶ 34 Reversed.

---

[6]If relevance *is* at issue, then delay would result irrespective of the avenue the union pursues to obtain records.