CHICAGO TEACHERS UNION, Local No. 1, American Federation of Teachers, AFL-CIO, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD et al., Respondents-Appellees.

First District (4th Division)   Nos. 1—01—0293, 1—01—2510 cons.

Opinion filed October 24, 2002.

HARTMAN, J., dissenting.

Gessler, Hughes, Socol, Piers, Resnick & Dim, Ltd., of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and A. Benjamin Goldgar and Brian F. Barov, Assistant Attorneys General, of counsel), for appellee Illinois Educational Labor Relations Board.

Marilyn F. Johnson, Lee Ann Lowder, and Rochelle L. Gordon, all of Chicago Board of Education Law Department, of Chicago, for appellee Chicago School Reform Board of Trustees.

PRESIDING JUSTICE THEIS delivered the opinion of the court:
This consolidated appeal was brought by petitioner, Chicago Teachers Union, Local No. 1, American Federation of Teachers, AFL-CIO (the Union), on petitions for direct review from two opinions and orders entered by the Illinois Educational Labor Relations Board (IELRB). After the Union filed grievances alleging that respondent, the Chicago School Reform Board of Trustees, now known as the City of Chicago Board of Education (Board of Education), violated Articles 24—2 and 24—4 of their collective bargaining agreement by failing to select four Chicago public school teachers to teach summer school classes, the arbitrators ruled in favor of the Union and ordered the Board of Education to make the teachers whole for the earnings they would have realized had they been selected to teach summer school. When the Board of Education refused to comply with the arbitration awards, the Union filed unfair labor practice charges against it, alleging that the Board of Education violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (115 ILCS 5/14(a)(1), (a)(8) (West 1996)) (the Act) by refusing to comply with the awards. The IELRB ruled that the arbitration awards were not binding, and thus, the Board of Education did not violate the Act by failing to comply with the awards, because the grievances concerned a matter of "class staffing and assignment" under section 4.5(a)(4) of the Act and were not subject to collective bargaining or arbitration. 115 ILCS 5/4.5(a)(4) (West 1996). For the following reasons, we reverse and remand.
At issue in this consolidated appeal is the interpretation and application of section 4.5(a)(4) of the Act, which provides:
"(a) Notwithstanding the existence of any other provision in this Act or other law, collective bargaining between an educational

employer *** and an exclusive representative of its employees shall not include any of the following subjects:

* * *

(4) Decisions to determine class size, class staffing and assignment, class schedules, academic calendar, hours and places of instruction, or pupil assessment policies, and the impact of these decisions on individual employees or the bargaining unit.

***

(b) The subject or matters described in subsection (a) are prohibited subjects of bargaining between an educational employer and an exclusive representative of its employees and, for the purpose of this Act, are within the sole authority of the educational employer to decide." 115 ILCS 5/4.5(a)(4), (b) (West 1996).

The following facts are relevant to this appeal. Chicago public school teachers Phyllis Trottman, Ellen Clark and Linnetta Banks are the subject of appeal number 1—01—0293. At the time of the arbitration hearing in 1999, Trottman had taught in the Chicago public schools for 18 years, working for the previous 10 years teaching first grade at Clara Barton Elementary School (Barton). Clark taught third- and fourth-grade special education at Barton for 10 years. Banks, a second-grade teacher at Barton, taught in the Chicago public schools for 29 years. All three were regularly appointed teachers and none had taught summer school in the two years prior to the 1998 summer session. In 1998, there were no regular summer school classes at Barton. Instead, the school offered the "Bridge Program," which consisted of classes for students who failed to advance to the next grade level, for grades 3, 6, and 8 and an "Early Intervention Program" for grades 1 and 2. Barton also offered a "Social Center Program," which focused on recreational activities.

At the arbitration hearing, Barton's principal testified that Trottman, Clark and Banks did not submit timely applications for summer school. However, in making credibility determinations, the arbitrator specifically found the principal's assertion that she did not receive Trottman's, Clark's and Banks' applications "not credible." The arbitrator also found "numerous inconsistencies and implausibilities in her testimony that seriously damaged her credibility as a witness." Similarly, the principal's testimony that she was unaware that Trottman, Clark and Banks were interested in teaching summer school "flies in the face of the evidence adduced on the record" and "cannot stand in the face of Trottman's credible testimony." The arbitrator carefully weighed the testimony and found that the principal "[came] up short." Accordingly, the arbitrator rejected the principal's assertion that Trottman, Clark and Banks were not chosen for summer school

because their applications were not timely received and made the specific factual finding that Trottman, Clark and Banks submitted timely summer school applications. Additionally, Trottman, Clark and Banks were not selected to teach during the 1998 summer session while at least six teachers who were chosen to teach that summer taught summer school during the previous two years. The arbitrator made no factual findings concerning the Social Center Program.

Chicago public school teacher Jeannie Pimentel is involved in appeal number 1—01—2510. Pimentel was a regularly appointed teacher with the Chicago public schools, teaching kindergarten at Marquette Elementary School. She submitted a timely application for the 1997 summer school session, but was not chosen to teach. When she spoke with the assistant principal regarding why she was not selected, he told her that if a vacancy arose during the summer, she would be selected to fill the position. However, when a position became available, it was given to a teacher with less seniority than Pimentel.

The Union filed a grievance on behalf of Trottman, Clark and Banks, alleging that the Board of Education violated Articles 24—2 and 24—4 of the 1995-99 collective bargaining agreement by failing to select them for the 1998 summer school session. Article 24—2 of the collective bargaining agreement provided:

"Assignments to all summer schools shall be made in the following order: (1) Regularly appointed teachers in their own subject, (2) Regularly certificated teachers in their own subject, (3) Regularly appointed teachers certified in other subjects in which they satisfy Bureau of Employment Eligibility requirements, (4) FTBs [full-time-basis substitute teachers], and (5) Day-to-day substitutes."

Article 24—4 provided: "In areas where there are more qualified applicants for summer school positions than positions available, preference shall be given to applicants who have taught fewer than two summer sessions immediately preceding the current summer session." The grievance alleged that Trottman, Clark and Banks applied to teach during the 1998 summer session, but were not chosen. Instead, the grievance stated, new teachers and teachers who worked more than two consecutive summer sessions were selected.

Barton's principal denied Trottman's, Clark's and Banks' grievance, stating that the issue was no longer grievable. The Union appealed the principal's decision to the Board of Education's chief executive officer, who denied the grievance on the basis that the teachers did not apply for summer school positions at Barton. The Union then demanded arbitration. At the arbitration hearing, the Board of Education objected to the arbitrator's jurisdiction, arguing that the grievance involved a matter of "class staffing and assignment" and was,

thus, a prohibited subject of bargaining and arbitration under section 4.5(a)(4) of the Act. The arbitrator deferred the question of substantive arbitrability to the IELRB. She then determined that Trottman, Clark and Banks applied for the 1998 summer session and were entitled to priority under Articles 24—2 and 24—4 of the collective bargaining agreement. The arbitrator concluded that the Board of Education violated the agreement by failing to follow the preferences established in Articles 24—2 and 24—4 for summer employment and ordered the Board of Education to make Trottman, Clark and Banks whole for any monetary losses that resulted from its actions, including full salaries for the 1998 summer session.

The Union also filed a grievance on behalf of Pimentel, alleging that the Board of Education violated Article 24—2 of the collective bargaining agreement by failing to give her a summer school position. The grievance alleged that Pimentel filed a timely application for the 1997 summer session but did not receive a position while other teachers with no certification and lower seniority were selected. Additionally, the assistant principal told Pimentel that she would receive any summer position if one became available. When a position did become available, it was offered to another teacher.

Marquette's principal denied this grievance, stating that he had no timely filed application for Pimentel. The Union appealed the decision to the Board of Education's chief executive officer, who also rejected the grievance. The Union then demanded arbitration. At the arbitration hearing, the Board of Education again objected to the arbitrator's jurisdiction under section 4.5(a)(4) of the Act. The arbitrator addressed the issue and determined that the failure to select Pimentel for a summer school position did not concern how summer school classes were staffed or what classes were to be assigned to summer school teachers and, thus, was not a decision to determine "class staffing and assignment" under section 4.5(a)(4). The arbitrator then addressed the merits of the grievance, determining that Pimentel submitted a timely application for the 1997 summer session and that she was promised a summer position if one became available. Therefore, the arbitrator concluded that the Board of Education violated Article 24—2 of the collective bargaining agreement by failing to select Pimentel for summer school and ordered the Board of Education to make her whole for the earnings she would have realized had she been selected to teach during the 1997 summer session.

In both cases, the Board of Education informed the Union that it would not implement the arbitration award. The Union filed unfair labor practice charges against the Board of Education, alleging that it violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act

by refusing to comply with the awards. Section 14(a)(8) prohibits educational employers from "[r]efusing to comply with the provisions of a binding arbitration award," and section 14(a)(1) prohibits educational employers from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1), (a)(8) (West 1996). The IELRB conducted investigations into the charges and issued complaints and notices of hearings. The Board of Education then filed answers and asserted its affirmative defenses. After the parties requested to proceed upon stipulated records and filed posthearing briefs, the administrative law judges (ALJ) issued their decisions.

In both decisions, the ALJs stated that in determining whether an employer violated section 14(a)(8) of the Act by refusing to comply with an arbitration award, the inquiry was limited to determining whether the award was binding, the content of the award and whether the employer complied with the award. *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board*, 246 Ill. App. 3d 967, 974, 617 N.E.2d 790, 794 (1992). In the instant case, there was no dispute as to the content of the awards or that the Board of Education failed to comply with them. The only issue was whether the awards were binding. Section 10(b) of the Act prohibits the implementation of any provision in a collective bargaining agreement that is in violation of or in conflict with any Illinois statute. 115 ILCS 5/10(b) (West 1996); *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 88, 649 N.E.2d 369, 372 (1995). An issue that cannot be the subject of a collective bargaining agreement also cannot be arbitrated. Consequently, arbitration awards that conflict with the Act are not binding and not enforceable. The ALJs then agreed with the Board of Education and determined that the arbitration awards in these cases conflicted with section 4.5(a)(4) of the Act because the underlying grievances concerned an issue of "class staffing and assignment." Therefore, the ALJs determined that the arbitration awards were not binding and the Board of Education did not violate sections 14(a)(8) and 14(a)(1) of the Act by refusing to comply with them.

The Union filed exceptions to both of the ALJs' recommended decisions. In split decisions, the IELRB affirmed the ALJs' decisions in both cases and found that the Board of Education did not violate sections 14(a)(8) and 14(a)(1) of the Act because the arbitration awards were not binding. The IELRB interpreted the term "class staffing and assignment" in section 4.5(a)(4) of the Act to mean which class a teacher is assigned to, not whether a teacher is assigned to a permanent position. The IELRB determined that summer school posi-

tions were given to teachers who were already employed by the Board of Education, and thus, assignment to summer school is not appointment to a permanent position, but an opportunity to teach additional courses while retaining their current positions. The IELRB stated that "[w]hether a teacher is assigned to teach summer school does not affect whether he/she has a job, but merely whether he/she is assigned to teach within that set of classes." *Chicago Teachers Union Local 1*, ___ Pub. Employee Rep. (Ill.), par. ___, No. 2000—CA—0033—C (IELRB April 19, 2001). Assignment to summer school involved a matter of "class staffing and assignment" and was, therefore, a prohibited subject of bargaining and arbitration.

Three members of the IELRB dissented in each case, stating that section 4.5(a)(4) refers to the assignment of a teacher to a particular class, not a set of classes such as summer school. Additionally, the dissenters contended that summer school is a distinct set of programs offered during a separate period of time and appointment to teach this set of programs is a separate hiring decision. The decision to select a teacher to teach summer school is a decision to employ a teacher in a position rather than assign him or her work. Thus, the dissenters argued, the grievances concerned employment decisions, not matters of "class staffing and assignment." The Union then filed these timely appeals, which were consolidated in this court upon the IELRB's motion.

■ An administrative agency's findings of fact are deemed to be *prima facie* true and correct and will not be reversed unless they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). However, an administrative agency's findings on questions of law are reviewed *de novo* and are not binding on a reviewing court. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. Where the agency's findings present a mixed question of law and fact, we apply the clearly erroneous standard of review. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392, 763 N.E.2d 272, 280 (2001). Under this standard, "the agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395, 763 N.E.2d at 282, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). While this standard is largely deferential to the agency, this does not mean "that a reviewing court must blindly defer to the agency's decision." *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395, 763 N.E.2d at 282.

■ In the present case, the IELRB's decision presents a mixed question of law and fact, one "involv[ing] an examination of the legal effect of a given set of facts." *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. "Stated another way, a mixed question is one 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " *AFM Messenger Service, Inc.*, 198 Ill. 2d at 390, 763 N.E.2d at 279, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). Here, the issue mainly concerns the application of the statutory interpretation of section 4.5(a)(4) of the Act to the facts, and thus, we apply the clearly erroneous standard of review.

■ As discussed above, the issue in this case concerns the interpretation and application of the term "class staffing and assignment" in section 4.5(a)(4) of the Act. 115 ILCS 5/4.5(a)(4) (West 1996). While all of the parties advanced various interpretations of this term in their briefs, they conceded at oral argument that this court's interpretation in *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 522, 734 N.E.2d 69 (2000), is correct and controlling. In *Chicago School Reform Board of Trustees*, this court analyzed the language contained in section 4.5(a)(4) of the Act and determined that the word "class" modified both "staffing" and "assignment." The court interpreted "class staffing and assignment" to mean how a class is staffed (*i.e.*, one teacher, two teachers working as a team, etc.) or what class is assigned to a particular teacher. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 530-31, 734 N.E.2d at 75-76. Thus, the court distinguished between grievances relating to retention, whether a person has a job or should have a job, and grievances relating to the assignment of teachers or classes.

An examination of two recent decisions illustrates this distinction. In *Chicago School Reform Board of Trustees*, the Union requested information from the Board of Education concerning the procedures and criteria it used when determining which teachers would be retained after several schools were reconstituted. The Union sought this information to evaluate claims that the Board of Education's decision not to retain several teachers was motivated by discrimination on the basis of race, age or union membership. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 525, 734 N.E.2d at 71-72. When the Board of Education failed to respond to this request, the Union filed several grievances, alleging that the Board of Education violated the nondiscrimination provisions of the collective bargaining agree-

ment by not retaining three teachers. The court found that the grievances involved questions of retention and discrimination and related to the decision whether to retain the grievants as employees, not to how a class is staffed or what class a particular teacher is assigned to teach. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 530-31, 734 N.E.2d at 75-76.

In contrast, a recent decision of the IELRB explains decisions that fall within "class staffing and assignment." In *Chicago Teachers Union Local 1*, 18 Pub. Employee Rep. (Ill.), par. 1013, No. 2000—CA—0042—C (IELRB November 16, 2001), the Union filed a grievance alleging that the Board of Education violated the collective bargaining agreement by not honoring teacher Jodi Greenburg's preference to remain in her position teaching pre-kindergarten. Instead, the grievance alleged, the Board of Education assigned Greenburg to teach second grade and assigned a less senior and less qualified teacher to the pre-kindergarten class. The IELRB explained that it "has found that a grievance involves 'class staffing and assignment' when the complainant contests a particular staffing assignment, lack of assignment or when the educational employer refuses to comply with an arbitrator's award ordering it to place the employee in a particular teaching position." *Chicago Teachers Union Local 1*, 18 Pub. Employee Rep. (Ill.), par. 1013, No. 2000—CA—0042—C (IELRB November 16, 2001). Therefore, the IELRB determined that the instant grievance contested a teacher's assignment to a particular class or position and, thus, involved issues of "class staffing and assignment."

■ Based on this court's interpretation of "class staffing and assignment" and the distinction between these cases, we find that the grievances in this consolidated appeal concerning the Board of Education's failure to select several teachers to teach summer school classes did not involve matters of "class staffing and assignment." The issue of whether one has a job is different from the issue of which class one is assigned to teach. These grievances did not concern how a class is staffed (*i.e.*, one teacher, two teachers working as a team, etc.) or what class is assigned to a particular teacher nor did they contest a particular staffing assignment or lack of assignment. Rather, the grievances involved whether to hire these teachers for additional employment during the summer. These grievances concerned the general issue of employment in summer school rather than the more specific topic of assignment to a particular class.

Whether a teacher is employed during a period of time, such as the summer, is a different issue from which class she is assigned to teach. Once a teacher is employed to teach summer school, the decision as to which class she will teach that summer would be a matter of

class staffing and assignment. Thus, if Trottman, Banks, Clark or Pimentel had been employed to teach the summer session and assigned to teach a specific class, any grievance that she should have been assigned to another summer school class would concern class assignment and fall within section 4.5(a)(4). However, the grievances filed in this consolidated appeal concerned only whether Trottman, Banks, Clark and Pimentel would be chosen to work summer school.

We recognize that the cases in which this court and the IELRB have applied section 4.5(a)(4) and found the grievances did not involve matters of "class staffing and assignment" all concern permanent employment decisions regarding retention or termination of employees. However, we find this distinction to be irrelevant. In this case, the grievances involved the Board of Education's failure to hire Trottman, Clark, Banks and Pimentel for the summer session. Although they retained their positions as Board of Education employees during the regular school year, they sought the ability to obtain additional work, and earn extra compensation, during the summer. Appointment to summer school classes is not merely an opportunity for teachers who are already employed to teach additional courses, as the IELRB suggests, but an opportunity to earn an additional salary by working a second job.

We find that the grievances in this case concerned employment issues and did not involve matters of "class staffing and assignment" under section 4.5(a)(4) of the Act. The arbitration awards did not conflict with the Act and, thus, were binding. Therefore, we hold that the IELRB's findings that the Board of Education did not violate section 14(a)(8) and, derivatively, section 14(a)(1) of the Act by failing to comply with the arbitration awards were clearly erroneous. Accordingly, the decisions of the Illinois Educational Labor Relations Board are reversed and we remand for further proceedings.

Reversed and remanded.

GREIMAN, J., concurs.

JUSTICE HARTMAN, dissenting:
From the majority's finding that the grievances in this case concerned employment issues rather than class staffing and assignment under section 4.5(a)(4) of the Illinois Educational Labor Relations Act, 115 ILCS 5/4.5(a)(4) (West 1996), I must respectfully dissent for the reasons that follow.

For its summer agenda of 1998, Barton Elementary School offered two programs: the Social Center Program, a recreation program

intended to keep children occupied during the summer months, in which students receive one hour of tutoring and two hours of recreation each day; and the Bridge Program, in which students in grades three, six and eight, who have failed to advance to the next grade level, take classes in the summer in an attempt to catch up on the skills they are missing. It is important to recognize that no regular summer school program was offered at Barton in the summer of 1998.

Summer Bridge Programs were offered not only at Barton, but also at other Chicago public schools. In fact, three Barton teachers taught in Bridge Programs at schools other than Barton in 1998. Six or seven Bridge Program positions were available at Barton for the summer of 1998. Evidence was adduced at the hearings that applications for employment at these programs were placed in every Barton teacher's box, the union representative's box and the engineer's box prior to selection. More applications were received than positions available. There was evidence that no applications were received from any of the grievants prior to the completion of the selection process. The social center positions, however, initially were not completely filled at Barton. The record shows no applications by the grievants for these positions. Recruitment calls had to be made and two teachers were hired from outside Barton for those positions.

If this case was about employment, "the ability to obtain additional work, and earn extra compensation, during the summer" (334 Ill. App. 3d at 945) and "an opportunity to earn an additional salary by working a second job" (334 Ill. App. 3d at 945), as found by the majority in its conclusion, there appears to have been openings at Barton for such employment in the summer of 1998, in the Bridge Program which the grievants failed to seek timely, and in the Social Center Program, which the grievants failed to seek at all. Clearly, the grievants here were not just seeking summer employment, but staff placement or assignment to a specific class, the Bridge Program, which was not within their prerogatives, nor was it arbitrable under section 4.5(a)(4).

I would affirm.