CHICAGO TEACHERS UNION, LOCAL 1, American Federation of Teachers, AFL-CIO, Petitioner-Appellant, v. CHICAGO SCHOOL REFORM BOARD OF TRUSTEES *et al.*, Respondents-Appellees.

First District (3rd Division)   No. 1—01—4414

Opinion filed March 12, 2003.

John K. Hughes, Jonathan A. Rothstein, Jose J. Behar, and Allison G. Margolies, all of Gressler, Hughes, Socol, Piers, Resnick & Dym, Ltd., of Chicago, for appellant.

Marilyn F. Johnson, General Counsel, and Lee Ann Lowder and Rochelle L. Gordon, all of Chicago Board of Education, of Chicago, for appellee Chicago School Reform Board of Trustees.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellee Illinois Educational Labor Relations Board.

JUSTICE WOLFSON delivered the opinion of the court:

The issue in this case is whether the transfer of a teacher from a permanent position to a reassigned teachers pool is a matter of "class staffing and assignment" as used in section 4.5(a)(4) of the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 2000)) (the Act).

The Illinois Educational Labor Relations Board (IELRB) concluded the decision to transfer a teacher to the reassigned teacher pool is a matter of "class staffing and assignment." According to the IELRB, such a decision is a prohibited subject of collective bargaining under the Act and not subject to arbitration under section 4.5(a)(4). 115 ILCS 5/4.5(a)(4) (West 2000).

We disagree. We reverse the IELRB's decision and remand for further proceedings.

## BACKGROUND

In 1997, Tyrone Greer was employed by the Chicago School Reform Board of Trustees, now known as the Chicago Board of Education (Board of Education). He was assigned to teach English at South

Shore High School. He was first assigned to South Shore in 1990 and had been employed by the Board of Education for about 10 years. His last day at South Shore was June 25, 1997.

In July, he called the teacher personnel office and learned that the principal of South Shore had closed Greer's position on June 30, 1997. When Greer reported to South Shore on August 26, 1997, the principal told Greer he had no "position number" for Greer and that Greer had to report to the Board of Education. When he did so, Greer learned he had become a "reassigned teacher," that is, a member of the reassigned teachers pool. Greer also received a letter from the director of human resources stating Greer was a reassigned teacher effective August 26, 1997, pursuant to the Board of Education's reassigned teacher policy.

Section 5 of the "Policy Regarding Reassignment and Layoff of Regularly Certified and Appointed Teachers" (the Policy) states that a reassigned teacher is not assigned any additional duties for the first 30 days after reassignment. During this time, the reassigned teacher may interview for positions at other schools. Under section 9, if the reassigned teacher has not found a position within the initial 30-day period, he is assigned to a "Region" as a day-to-day substitute teacher. One day a week, he is permitted to interview at schools for a permanent position. Under section 10, if after 10 months of reassignment the teacher is unable to secure a permanent position, the teacher will be given an "honorable termination."

On September 9, 1997, the union initiated a grievance on behalf of Greer. The union said Greer contended his displacement violated section 2 of the Policy and articles 3 and 42 of the collective bargaining agreement between the Board of Education and the union because teachers with less seniority remained employed at South Shore.

Article 42 describes the policies and procedures applicable to the transfers of teachers.[1] Article 3 of the collective bargaining agreement incorporates violations of the Policy into the agreement by defining a "grievance" in relevant part as: "a complaint involving a work situation or a complaint that there has been a deviation from, misinterpretation of, or misapplication of a practice or *policy*." (Emphasis added.)

The pertinent portions of the Policy read:

"Section 1—Scope of Policy

---

[1]The union appears to have abandoned its reliance on article 42 by failing to raise the issue before the arbitrator during the hearing and failing to argue it in the Board of Education's post-arbitration-hearing brief. Both the arbitrator and the administrative law judge noted this in their respective decisions. For this reason, we do not discuss Article 42 in any detail.

Whenever an attendance center or a program is closed, there is a drop in enrollment, the educational focus of the attendance center is changed such that available teaching positions cannot accommodate some or all current regularly certified and appointed teaching staff, or when an attendance center is subject to actions taken as a result of remediation, probation, reconstitution or educational crisis, such staff will be reassigned or laid off in accordance with this policy.

Section 2—Selection of Teachers for Removal

A. In Attendance Centers/Programs That Are Not Subject to Reconstitution

If changes in an attendance center or program require removal of some but not all teachers, teachers with appropriate certifications will be selected for retention based on seniority. Provisionals, Day-to-Day substitutes, Cadre substitutes, FTBs and Probationary teachers within the attendance center or program will be removed before any regularly certified and appointed teachers with the appropriate certification is removed, in that order. Within each group, system-wide seniority shall be the determining factor."

When the union was unable to resolve the grievance directly with the Board of Education, the union demanded arbitration under the collective bargaining agreement.

## The Arbitration

At the arbitration hearing, Greer testified about his reassignment. He also testified that at least one of the teachers that remained at South Shore and taught English had less seniority than Greer.

In its posthearing brief, the Board of Education contended Greer's grievance was "solely a dispute over *** staffing and assignment."[2] The Board of Education said that under section 4.5(a)(4) of the Act, class staffing and assignment are prohibited subjects of bargaining and arbitration. 115 ILCS 5/4.5(a)(4) (West 2000). The Board of Education also contended the union had failed to prove any violation of the collective bargaining agreement.

On March 9, 1999, the arbitrator issued an opinion and award. In the opinion and award, he deferred the issue of statutory inarbitrability to the IELRB.

In addressing the merits, the arbitrator noted the Policy required the removal of certain classifications of teachers, such as FTBs (that is, full-time-basis substitutes), before any certified and appointed teachers with the appropriate certifications are removed. Greer was a certified and appointed teacher teaching English during the 1996-97

---

[2]The Board of Education initially raised the issue of arbitrability in a motion to bifurcate the arbitration, which the arbitrator denied.

school year. Carol Moran, an FTB, taught English at South Shore during the 1996-97 school year and continued teaching English during the 1997-98 school year.

The arbitrator concluded Greer's removal from South Shore while Moran remained constituted a violation of the Policy. The arbitrator ordered Greer restored to the status he enjoyed prior to removal, reinstated to a position as an English teacher at South Shore, and be made whole for all wages and benefits lost until he was restored.

The Board of Education refused to comply with the arbitration award.

## Administrative Proceedings

On March 25, 1999, the union filed an unfair labor practice charge against the Board of Education contending violations of section 14(a)(8) and, derivatively, section 14(a)(1) of the Act, for the Board of Education's refusal to comply with a binding arbitration award. 115 ILCS 5/14(a)(1), (a)(8) (West 2000). The Executive Director of the IELRB issued a complaint. The Board of Education responded by contending the arbitration award was not binding because the grievance was not arbitrable under section 4.5(a)(4) of the Act.

On May 15, 2001, the administrative law judge issued her recommended decision and order. In it, she concluded Greer's reassignment was not a matter of "class staffing and assignment." Rather, Greer's grievance "involves a dispute about retention in a permanent position." Because section 4.5(a)(4) did not apply to Greer's grievance, the grievance was arbitrable, the administrative law judge said. After concluding the Board of Education violated sections 14(a)(1) and 14(a)(8) by failing to comply with a binding arbitration award, the administrative law judge ordered the Board of Education to, among other things, comply with the arbitrator's award.

The Board of Education filed exceptions to the administrative law judge's recommended decision. On November 16, 2001, the IELRB issued an opinion and order. In the opinion, the IELRB reversed the administrative law judge's recommended decision and order.

The IELRB noted section 10(b) of the Act makes null and void any provision in the collective bargaining agreement that is in violation of or conflicts with a statute. Section 4.5 prohibits bargaining of, among other things, determinations of "class staffing and assignment." The Act also prohibits arbitration of those subjects.

The IELRB said because Greer was receiving full salary and benefits at the time of the arbitration hearing, his grievance was not a matter of job retention. Instead, the subject of Greer's grievance involved matters of "class staffing and assignment." Thus, the arbitra-

tion award was not binding, and the Board of Education did not violate sections 14(a)(1) and 14(a)(8) by refusing to comply with the award, according to the IELRB.

One member dissented, concluding that transfer to the reassigned teachers pool was the "first step in a process used to discharge teachers from permanent employment." Thus, Greer's grievance was not a matter of "class staffing and assignment," but of job retention, according to the dissenter.

The union then filed this appeal against the IELRB and the Board of Education. The issue on appeal is whether the IELRB correctly concluded Greer's grievance was not arbitrable.

## DECISION

### Standard of Review

■ We are asked to interpret the phrase "class staffing and assignment" as used in section 4.5(a)(4) and determine whether the subject of Greer's grievance involved a determination of "class staffing and assignment." Because the issue before us is a mixed question of law and fact, we will apply the clearly erroneous standard of review. See *Chicago Teachers Union v. Illinois Educational Labor Relations Board,* 334 Ill. App. 3d 936, 942-43, 778 N.E.2d 1232 (2002) (court employed clearly erroneous standard of review where issue before it concerned the interpretation and application of the phrase "class staffing and assignment" as used in section 4.5(a)(4) of the Act).

Under the clearly erroneous standard of review, the reviewing court will reverse the agency's decision "only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security,* 198 Ill. 2d 380, 395, 763 N.E.2d 272 (2001), quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). This standard is largely deferential to the agency's decision, but does not require blind deference. *AFM Messenger Service, Inc.,* 198 Ill. 2d at 395.

### The Illinois Educational Labor Relations Act

■ The Illinois Educational Labor Relations Act regulates labor relations between educational employers and educational employees. 115 ILCS 5/1 (West 2000). The Act also requires employers to "bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon." 115 ILCS 5/4 (West 2000). The collective bargaining agreement must contain a grievance resolution procedure and must

"provide for binding arbitration of disputes concerning the administration or interpretation of the agreement." 115 ILCS 5/10(c) (West 2000).

The union and the Board of Education entered into a collective bargaining agreement for the period September 1, 1995, to August 31, 1999. Article 3 of the collective bargaining agreement describes the grievance procedure. Article 3—5 provides for the arbitration of grievances and states the decision of the arbitrator "shall be final and binding on the parties."

■ Under section 14 of the Act, which describes unfair labor practices, employers are prohibited from "[r]efusing to comply with the provisions of a binding arbitration award" (115 ILCS 5/14(a)(8) (West 2000)) and "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act" (115 ILCS 5/14(a)(1) (West 2000)).

■ Section 4.5 of the Act describes prohibited subjects of collective bargaining. Among those prohibited subjects are:

"(4) Decisions to determine class size, class staffing and assignment, class schedules, academic calendar, hours and places of instruction, or pupil assessment policies, and the impact of these decisions on individual employees or the bargaining unit." 115 ILCS 5/4.5(a)(4) (West 2000).

A prohibited subject of bargaining cannot be arbitrated. *Chicago Teachers Union*, 334 Ill. App. 3d at 941.

■ Section 10(b) of the Act prohibits implementation of any provision in a collective bargaining agreement if the implementation "would be in violation of, or inconsistent with, or in conflict with any [Illinois] statute or statutes." 115 ILCS 5/10(b) (West 2000). As applied here, should the arbitration award conflict with the provisions of section 4.5(a)(4) (that is, should Greer's grievance involve a matter of "class staffing and assignment"), under section 10(b) the award is not binding, and no violation of section 14(a)(8) occurred. Thus, the sole question before us is whether Greer's grievance involved a matter of "class staffing and assignment."

### Interpretation of "Class Staffing and Assignment"

The union contends "class staffing and assignment" as used in section 4.5(a)(4) means class staffing and class assignment. The IELRB agrees with the union that "class staffing and assignment" is unambiguous and should be interpreted to mean class staffing and class assignment. Although the Board of Education concedes "class staffing and assignment" refers to which class a teacher is assigned to teach, the Board of Education nonetheless contends the phrase "class staffing and assignment" is not clear and unambiguous and urges us to consider the Act's legislative history.

■ The word "class" in "class staffing and assignment" as used in section 4.5(a)(4) modifies both "staffing" and "assignment." *Chicago Teachers Union*, 334 Ill. App. 3d at 943; *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 522, 530-31, 734 N.E.2d 69 (2000). "Class staffing and assignment" refers to "how a class is staffed (*i.e.*, one teacher, two teachers working as a team, etc.) or what class is assigned to a particular teacher." *Chicago Teachers Union*, 334 Ill. App. 3d at 943. Issues of job retention do not fall within the scope of the phrase. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 531.

■ We reject the Board of Education's contention that we should consider the legislative history of the Act in interpreting section 4.5(a)(4). "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 451, 687 N.E.2d 1014 (1997). The language of the statute is the best evidence of the legislature's intent. *Bruso*, 178 Ill. 2d at 451. If the plain language of the statute reveals the legislature's intent, we need not consider other aids for construction. *In re Marriage of Murphy*, 203 Ill. 2d 212, 219 (2003).

Here, the legislature's intent in employing the phrase "class staffing and assignment" is clear and unambiguous. The parties agree the phrase refers to how a class is staffed and what teacher is assigned to teach which class.

This construction is further supported by viewing section 4.5(a)(4) as a whole. *Bruso*, 178 Ill. 2d at 451-52 ("The court must evaluate the language of the statute as a whole, considering each part or section in connection with every other part or section"). Besides decisions on "class staffing and assignment," section 4.5(a)(4) also excludes the following subjects from bargaining: decisions to determinate class size, class schedules, academic calendar, hours and places of instruction, or pupil assessment policies. 115 ILCS 5/4.5(a)(4) (West 2000). The section also excludes "the impact of these decisions on individual employees or the bargaining unit." 115 ILCS 5/4.5(a)(4) (West 2000).

These exclusions all pertain to the logistics of organizing and operating classes. These exclusions do not pertain to decisions about job retention. To read "class staffing and assignment" to include more than just decisions on how to staff a class or which teacher is assigned to which classroom is to interpret the phrase in a manner inconsistent with not only the plain language of the statute, but also the remainder of section 4.5(a)(4). Because the language of section 4.5(a)(4) is clear and unambiguous, we need not resort to the legislative history to ascertain the legislators' intent.

### Application of "Class Staffing and Assignment"

The remaining issue is whether assigning Greer to the reassigned teachers pool constitutes a decision about "class staffing or assignment." Our analysis in two recent cases where we interpreted and applied section 4.5(a)(4) provides guidance.

In *Chicago Teachers Union*, the union filed grievances on behalf of four teachers contending violations of the collective bargaining agreement where the Board of Education failed to select these teachers to teach summer school classes. The arbitrators ruled in favor of the union in each case, but the Board of Education failed to comply with the arbitration awards. The union filed unfair labor practice charges against the Board of Education alleging violations of section 14(a)(8) and, derivatively, section 14(a)(1).

The IELRB concluded "class staffing and assignment" referred to which class a teacher is assigned to, not whether a teacher is assigned to a permanent position. Because the teachers already were employed by the Board of Education, and because a summer school assignment is not a permanent position, the IELRB said assignment to summer school was a matter of "class staffing and assignment" and a prohibited subject of bargaining and arbitration. The IELRB concluded the arbitration awards were not binding. We reversed.

We noted that the "issue of whether one has a job is different from the issue of which class one is assigned to teach." *Chicago Teachers Union*, 334 Ill. App. 3d at 944. We concluded that whether a teacher is given summer employment is not a matter of "class staffing and assignment," because summer employment is an opportunity to earn an additional salary. *Chicago Teachers Union*, 334 Ill. App. 3d at 944-45. The grievances were about "the general issue of employment in summer school rather than the more specific topic of assignment to a particular class." *Chicago Teachers Union*, 334 Ill. App. 3d at 944.

In *Chicago School Reform Board of Trustees*, the Board of Education reconstituted seven schools. Teachers displaced due to the reconstitutions were required to interview for their previous positions. During this reconstitution, a number of teachers were not rehired to their previous positions. In accord with the Policy, they remained employees for 10 months during which time they were required to search for employment. If the teachers failed to find another position within 10 months, they would be laid off and given an honorable termination. At the time of the arbitration hearing, not a single teacher had been laid off.

Several teachers who contended the interview process was discriminatory requested the union file grievances on their behalf. To investigate the charges, the union requested information from the

Board of Education in accord with the collective bargaining agreement. When the Board of Education failed to respond, the union filed grievances on behalf of several teachers. The Board of Education then denied the request for information.

The union initiated an unfair labor practices charge against the Board of Education for failure to provide the requested information. The Board of Education responded by contending, among other things, that the information requested pertained to a prohibited subject of bargaining under section 4.5(a)(4) of the Act.

The administrative law judge issued a recommended decision and order finding that because of the displacement and potential termination of the teachers as a result of the reconstitutions, the information requested concerned the terms and conditions of employment. The administrative law judge concluded the Board of Education violated the Act by failing to supply the requested information.

On appeal, the Board of Education contended the underlying grievances for which the Union sought the information were about decisions on "class staffing and assignment," a prohibited subject of bargaining. We rejected this contention.

We concluded:

> "[T]he [underlying] grievances relate to the decision whether to retain the grievants as employees, not to how a class is staffed (one or two teachers) or what class a particular teacher is assigned to teach. The grievances at issue involve questions of *retention* and discrimination, not prohibited subjects of bargaining." (Emphasis added.) *Chicago School Reform Board of Trustees,* 315 Ill. App. 3d at 531.

Here, Greer was removed from his permanent position as an English teacher at South Shore and designated a "reassigned teacher." Although his displacement is referred to as a reassignment, he was not reassigned to teach another class or even reassigned to another permanent position.

As a "reassigned teacher," Greer was not given any class to teach initially. His employment no longer was permanent. On the contrary, if he was unable to find a permanent position within the Board of Education during the 10 months following reassignment, he would be "honorably terminated."[3] Thus, the decision to displace Greer removed

---

[3]Greer was unable to find a permanent position within the 10-month period. The Board honorably terminated Greer in January 1999. Greer later found a permanent position and was reinstated in August 1999. Greer did not challenge his termination, but instead pursues the appeal to recover under the arbitration award his lost wages for the period January 1999 to August 1999.

Greer from a permanent teaching position and placed him in teaching limbo—hardly a decision about class assignment.

As we noted in *Chicago School Reform Board of Trustees*, the decision to place a teacher in the reassigned teachers pool is a matter of retention, which is not a prohibited subject of bargaining under section 4.5(a)(4). *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 531. That the teachers had not been terminated and remained employees of the Board of Education did not affect our analysis. Similarly, here, that Greer remained employed after becoming a "reassigned teacher" does not affect our conclusion.

The IELRB attempts to distinguish *Chicago School Reform Board of Trustees* by categorizing it as a case involving grievances alleging only that the Board of Education had violated the nondiscrimination provisions of the collective bargaining agreement by removing certain teachers from reconstituted schools based on discriminatory reasons. The IELRB is only partially correct.

In *Chicago School Reform Board of Trustees*, in determining whether the Board of Education's failure to provide the requested information was a violation of the Act, we looked at the underlying grievances for which the Union had requested information. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 530-31. The basis for the underlying grievances was the decision to remove the teachers from their positions and place them in the reassigned teachers pool. That the reason may have been discriminatory was only *part* of the analysis. This is evidenced by our statement that "[t]he [underlying] grievances at issue involve questions of *retention* and discrimination, not prohibited subjects of bargaining." (Emphasis added.) *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 531.

The IELRB relies on its decision in *Chicago School Reform Board of Trustees*, 15 Pub. Employee Rep. (Ill.), par. 1037, No. 98—CA—0021—C (IELRB April 23, 1999) (hereinafter *Reassigned Teachers*). In that case, the union filed a grievance concerning teachers in the reassigned teachers pool, contending the Board of Education violated the collective bargaining agreement by appointing temporary teachers, instead of teachers from the reassigned teachers pool, to vacant positions. The IELRB concluded the Policy "concerns the method by which teachers are assigned to classes, and, accordingly, involves decisions concerning 'class staffing and assignment.' "

*Reassigned Teachers* did not involve the placing of a permanently positioned teacher into the reassigned teachers pool. It involved the class assignments not given to teachers already in the pool. Arguably, the IELRB was dealing with a method for assigning teachers to classes, an issue not subject to arbitration. Whether the IELRB correctly

decided the matter is something we need not determine. This is a different case.

The Board of Education contends section 4.5(a)(4) is nonetheless controlling because the true decision grieved is the Board of Education's decision to assign another teacher to teach the remaining English classes at South Shore. That Greer was designated a "reassigned teacher" was merely the "impact of [this] decision[ ] on [Greer]," which is a prohibited subject of bargaining under section 4.5(a)(4). 115 ILCS 5/4.5(a)(4) (West 2000). Similarly, the IELRB contends the decision to reassign Greer implicated the Board of Education's decisions about which remaining teachers would be assigned to which remaining classes.

We read the language of section 4.5(a)(4) more narrowly. This was a particular decision to place Greer in the reassigned teachers pool. Of course, that decision had grave impact on him. But that would matter only in the event that he was the subject of a class staffing or class assignment decision. He was not. When the grievance at issue involves a question of job retention, it is not a prohibited subject of bargaining and, thus, arbitration. *Chicago School Reform Board of Trustees*, 315 Ill. App. 3d at 531.

The IELRB contends the Policy on reassignment is a vehicle by which teachers receive new teaching assignments; thus, a decision to designate a teacher a "reassigned teacher" is a matter of "class assignment." In so contending, the IELRB completely ignores the fact that "reassigned teachers" are not guaranteed new teaching assignments. On the contrary, they are required to search for new teaching positions. And, if they are unable to find a new position, they are *terminated*.

It would be little solace to a teacher that his termination is "honorable." Either way, he is out of a job. The Board of Education would have ended his employment without incurring the inconvenience of complying with the collective bargaining agreement.

Because Greer's grievance did not fall within the prohibited subjects of section 4.5(a)(4), the arbitrator's award did not conflict with the Act and is binding on the parties. By failing to abide by the award, the Board of Education violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act.

### The Policy

The union contends, aside from whether the grievance was about "class staffing and assignment," the IELRB's decision should be reversed because the Board of Education must follow its own policies. According to the Union, section 4.5(a)(4) is specifically directed at

substantive provisions of the collective bargaining agreement and does not bar enforcement of the Policy.

Our conclusion in favor of the union based on the interpretation and application of section 4.5(a)(4) would dispose of this case. There is no need to address this issue.

### Section 34—18(31) of the Illinois School Code

The Board of Education contends the arbitration award is not binding because it also conflicts with section 34—18(31) of the Illinois School Code (105 ILCS 5/34—18(31) (West 2000)). For purposes of administrative review, a party waives review of arguments not raised before the administrative agency. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 185, 726 N.E.2d 65 (2000). Because the Board of Education never raised this argument before the IELRB, the Board has forfeited our review of this contention.

### CONCLUSION

For the reasons stated we reverse the IELRB's decision and remand this cause to the IELRB for further proceedings. We decide only the issue of arbitrability. On remand, the IELRB will review the arbitrator's award. Because Greer did not grieve his termination, that issue is not before the IELRB or this court. We make no comment on the question of whether Greer suffered any compensable loss.

Reversed and remanded.

SOUTH, P.J., and HOFFMAN, J., concur.